# IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| BRETT PASSINEAU, | ) | 1:12-cv-01894 LJO GSA PC |
| | ) | |
| Plaintiff, | ) | ORDER REQUIRING PLAINTIFF TO |
| | ) | FILE AMENDED COMPLAINT OR |
| v. | ) | NOTIFY COURT OF WILLINGESS TO |
| | ) | PROCEED ONLY ON CLAIMS |
| | ) | FOUND TO BE COGNIZABLE |
| W. OXBORROW, et al., | ) | |
| | ) | RESPONSE DUE IN THIRTY DAYS |
| Defendants. | ) | |
| | ) | |

## I. Screening Requirement

Plaintiff is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff has consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c).

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

"Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions," none of which applies to section 1983 actions. Swierkiewicz v. Sorema N. A., 534 U.S. 506, 512 (2002); Fed. R. Civ. P. 8(a). Pursuant to Rule 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a). "Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Swierkiewicz, 534 U.S. at 512. However, "the liberal pleading standard . . . applies only to a plaintiff's factual allegations." Neitze v. Williams, 490 U.S. 319, 330 n.9 (1989). "[A] liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled." Bruns v. Nat'l Credit Union Admin., 122 F.3d 1251, 1257 (9th Cir. 1997) (quoting Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982)).

## II.     Plaintiff's Claims

### A.     Summary of Complaint

Plaintiff, an inmate in the custody of the California Department of Corrections and Rehabilitation (CDCR) at Pleasant Valley State Prison, brings this civil rights action against defendant correctional officials employed by the CDCR at Pleasant Valley. Plaintiff names the following individual defendants: Sergeant W. Oxborrow; Correctional Officer (C/O) E. Cantu; C/O R. Gamboa; C/O R. Rodriguez. Plaintiff sets forth Eighth Amendment claims of failure to protect, excessive force, and deliberate indifference to his serious medical needs.

Plaintiff, a convicted sex offender, arrived at Pleasant Valley on May 25, 2011, and was placed on a sensitive needs yard. Plaintiff requested protective custody because of his underlying offense. The Facility A sensitive needs yard where Plaintiff was housed is populated mostly by inmates convicted of sex crimes or crimes against children.

On June 14, 2011, Plaintiff was released from orientation status and ordered to move into Building 3, cell 129. The other inmate in cell 129 was inmate McCown. Upon Plaintiff's entrance into Building 3, Defendant Cantu called Plaintiff over to the officer's podium. Plaintiff alleges that: "Cantu then asked Plaintiff, 'what are you in prison for?' Plaintiff uncomfortably

said, 'child abuse.' Cantu said, 'stop fucking lying. I know you're that Dateline rapist. Go to your cell.'" (Compl. 5:7-10.)

When Plaintiff approached cell 129, Cantu called inmate McCown to the podium. Cantu spoke with McCown at the podium. Plaintiff alleges that the following occurred:

> When McCown entered the cell and closed the door, he began questioning Plaintiff about his commitment offense. Plaintiff told McCown that he would not answer personal questions. McCown then said, "I have it from a higher authority that you're that Dateline rapist. You have to move your shit out of here, we can't be cellies."
>
> Plaintiff went to the cell door and yelled to Cantu, saying, "please help me. My cellie doesn't want me in here." Cantu ignored him. Plaintiff yelled again, saying, "I have to get out of here. My cellie's gonna beat me up. Please help me." However, Cantu ignored Plaintiff once more.
>
> Cell 129 is situated behind the officer's podium, and in close proximity thereto. Given that Plaintiff was screaming at the top of his voice, it is nearly impossible for Cantu not to have heard Plaintiff's screams for help.
>
> McCown then approached the cell door and yelled, "Cantu, get this f***ing dude out of my cell, or I'm gonna beat his ass." At that point, an inmate porter came to the door, and said, "I just got at Cantu for you. He's not coming over here. You're gonna have to sock that dude up."
>
> McCown then approached Plaintiff and began punching him in the neck and face. Plaintiff lost his balance and fell, hitting his head on the cell table. Plaintiff curled up on the ground to help fend off McCown's blows. McCown then kneed Plaintiff in the side of his head and neck. Plaintiff started screaming for help and retreated under the cell table.
>
> While McCown continued punching Plaintiff, Cantu came to the cell door and yelled, "get down. Get the f**k down." Plaintiff then heard the alarm sound.
>
> Responding staff arrived at the cell and McCown stopped punching Plaintiff. The cell door opened and Defendants Cantu and Oxborrow ordered Plaintiff to crawl out of the cell backwards. Plaintiff complied with this order.

3

> As Plaintiff started crawling as instructed, Cantu and Oxborrow violently grabbed Plaintiff's legs and snatched him out the cell, hitting Plaintiff's leg on the metal door jamb, which caused Plaintiff to scream in pain.
>
> After pulling Plaintiff out of the cell, and while Plaintiff's was behind his back [sic], Cantu dropped his knee with full force in the small of Plaintiff's back, causing pain. Plaintiff tried turning his around to ask why force was being applied to his back, when Defendant Rodriguez violently stepped on Plaintiff's neck and yelled, "turn around. Don't f**king look at me."
>
> Defendants Cantu, Oxborrow, and Rodriguez placed Plaintiff in handcuffs, lifted him to his feet and, without resistance from Plaintiff, slammed his face into the wall adjoining cells 128 and 129.

(Compl. 5:14-7:7.)

Plaintiff alleges that after his face was slammed into the wall, Cantu and Rodriguez kicked his prescription eyeglasses away from him. Plaintiff asked for permission to retrieve his glasses. Both Cantu and Rodriguez then "violently jerked" on Plaintiff's arms and began escorting him to the program office. Plaintiff alleges that his glasses were destroyed, and he did not receive another pair for several months.

Plaintiff was taken to the Program Office and placed in a holding cell, and seen by a Licensed Vocational Nurse (LVN). While Rodriguez was present, Plaintiff explained that he was experiencing head, neck and back pain from the attack by inmate McCown and the use of force by Cantu, Oxborrow and Rodriguez. While the LVN was conducting the examination, Rodriguez "continually interrupted with expletives." Plaintiff asked Rodriguez "in a respectful manner" not to interfere with the medical evaluation because Plaintiff was injured and needed medical attention. Rodriguez then directed the LVN to leave. Plaintiff did not receive further medical treatment until two days later. Plaintiff was seen by a physician, who diagnosed a subconjunctival hemorrhage in Plaintiff's left eye. Plaintiff was prescribed pain medication.

Plaintiff was subsequently released to Building 4, cell 139. When Plaintiff arrived in Building 4, he was asked by Defendant Gamboa whether he was "that f***ing guy from

Building 3." When Plaintiff answered yes, Gamboa told Plaintiff he would "get to you when I get to you." Plaintiff was denied a mattress and blanket for two days. Plaintiff told Gamboa that he was in pain. Plaintiff alleges that as a result of sleeping on the bare metal for two days, his head, neck and back pain worsened.

### B. Eighth Amendment Claims

#### 1. Failure to Protect

The Eighth Amendment requires prison officials to take reasonable measures to guarantee the safety of inmates, which has been interpreted to include a duty to protect prisoners. Farmer v. Brennan, 511 U.S. 825, 832-33 (1994); Hearns v. Terhune, 413 F.3d 1036, 1040 (9th Cir. 2005). A prisoner seeking relief for an Eighth Amendment violation must show that the officials acted with deliberate indifference to the threat of serious harm or injury to an inmate. Gibson v. County of Washoe, 290 F.3d 1175, 1187 (9th Cir. 2002). "Deliberate indifference" has both subjective and objective components. A prison official must "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and . . . must also draw the inference." Farmer, 511 U.S. at 837. Liability may follow only if a prison official "knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." Id. at 847.

The complaint states a claim for relief against Defendant Cantu for failure to protect. Plaintiff alleges facts indicating that Cantu knew Plaintiff faced a risk of being attacked by inmate McCown, yet failed to protect Plaintiff from that danger. Further, a reasonable inference can be drawn that Cantu informed McCown of Plaintiff's commitment offense, placing Plaintiff in danger.

#### 2. Excessive Force

The Eighth Amendment's prohibition against cruel and unusual punishment protects prisoners not only from inhumane methods of punishment but also from inhumane conditions of confinement." Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006). '[W]hile conditions of confinement may be, and often are, restrictive and harsh, they 'must not involve the wanton and unnecessary infliction of pain.'" Id. (Quoting Rhodes v. Chapman, 452 U.S. 337, 347

(1981)). "What is necessary to show sufficient harm for purposes of the Cruel and Unusual Punishment Clause depends on the claim at issue . . . ." Hudson v. McMillian, 503 U.S. 1, 8 (1992).

For excessive force claims, the issue is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson, 503 U.S. at 7. Although de minimis uses of force do not violate the Constitution, the malicious and sadistic use of force to cause harm always violates the Eighth Amendment, regardless of whether or not significant injury is evident." Id. at 9-10.

Liberally construed, the complaint states a claim for relief against Defendants Cantu, Rodriguez and Oxborrow. Plaintiff allege that, although he did not offer any resistance, all three Defendants placed him in handcuffs, lifted him to his feet, and slammed his face into the cell walls on either side of his cell. Plaintiff also alleges that Cantu "dropped his knee with full force in the small of Plaintiff's back."

### 3.     Denial of Medical Treatment

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 295 (1976)). The two part test for deliberate indifference requires a plaintiff to show (1) "'a serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." Jett, 439 F.3d at 1096 (quoting McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds, WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc) (internal quotations omitted)).

Plaintiff fails to state a claim for relief on his medical care claim. Plaintiff alleges that he was seen by the LVN, and that Rodriguez ordered the LVN to leave. Plaintiff was not seen until two days later. Mere delay in medical treatment does not constitute deliberate indifference. Shapley v. Nevada Bd. of State Prison Com'rs, 766 F.2d 404, 407 (9th Cir. 1985). A plaintiff must show the delay caused him serious harm. But see McGuckin, supra at 1060 (plaintiff not

6

required to show "substantial harm"). In addition, a prisoner must show defendant knew aid was required, had the ability to render that aid, yet "sat idly by." Id. In other words, deliberate indifference is a function of the seriousness of prisoner plaintiff's medical needs and the wrongfulness of the defendant's actions in light of those needs. McGuckin, supra at 1061. The facts alleged indicate that Plaintiff was examined by the LVN. There are no facts alleged indicating that Rodriguez knew of a specific, serious threat to Plaintiff's health or safety, and acted with disregard to that threat. There are no facts alleged indicating that Rodriguez was made aware of a serious injury of Plaintiff's, or any emergency medical condition. Further, there are no facts alleged indicating that Rodriguez caused the two day delay. The facts indicate that Rodriguez directed the LVN to leave. Such an allegation, of itself, fails to state a claim for relief.

  **C.**  **Defendant Gamboa**

Plaintiff's sole allegation against Defendant Gamboa is that he denied Plaintiff a mattress and blanket for two days. The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006). Extreme deprivations are required to make out a conditions of confinement claim, and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation. Hudson v. McMillian, 503 U.S. 1, 9 (1992) (citations and quotations omitted). In order to state a claim for violation of the Eighth Amendment, Plaintiff must allege facts sufficient to support a claim that prison officials knew of and disregarded a substantial risk of serious harm to Plaintiff. Farmer v. Brennan, 511 U.S. 825, 847 (1994); Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998).

Here, the facts alleged indicate that Plaintiff was denied a mattress and blanket for two days. Plaintiff alleges that the event occurred in May while he was housed at Pleasant Valley State Prison in Coalinga. That Plaintiff did not have a mattress or blanket for two days does not

constitute and extreme deprivation within the meaning of the Eighth Amendment.  This claim should therefore be dismissed.

## III.  <u>Conclusion and Order</u>

Plaintiff's complaint states claims under the Eighth Amendment against Defendant Cantu for failure to protect Plaintiff and against Defendants Cantu. Oxborrow and Rodriguez for use of excessive physical force.  However, the complaint does not state any other cognizable claims. The Court will provide Plaintiff with the opportunity to file an amended complaint curing the deficiencies identified by the Court in this order.  <u>Noll v. Carlson</u>, 809 F.2d 1446, 1448-49 (9th Cir. 1987).  Plaintiff may not change the nature of this suit by adding new, unrelated claims in his amended complaint.  <u>George v. Smith</u>, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).

If Plaintiff does not wish to file an amended complaint and is agreeable to proceeding only on the claims identified in this order as cognizable, Plaintiff may so notify the Court in writing, and the Court will issue a recommendation for dismissal of the other claims and defendants, and will  forward  to Plaintiff three summonses and three USM-285 forms for completion and return.  Upon receipt of the forms, the Court will direct the United States Marshal to initiate service of process.

If Plaintiff opts to amend, his amended complaint should be brief, Fed. R. Civ. P. 8(a), but must state what each named defendant did that led to the deprivation of Plaintiff's constitutional or other federal rights, <u>Hydrick</u>, 500 F.3d at 987-88.  With respect to defendants like Warden Clark, "there is no pure *respondeat superior* liability under § 1983, [and] a supervisor [may only be held] liable for the constitutional violations of subordinates 'if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them.'"  <u>Id.</u> at 988 (quoting <u>Taylor v. List</u>, 880 F.2d 1040, 1045 (9th Cir. 1989)). Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . ."  <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 554  (2007) (citations omitted).

Finally, Plaintiff is advised that an amended complaint supercedes the original complaint, Forsyth v. Humana, Inc., 114 F.3d 1467, 1474 (9th Cir. 1997); King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987), and must be "complete in itself without reference to the prior or superceded pleading," Local Rule 15-220.  Plaintiff is warned that "[a]ll causes of action alleged in an original complaint which are not alleged in an amended complaint are waived." King, 814 F.2d at 567 (citing to London v. Coopers & Lybrand, 644 F.2d 811, 814 (9th Cir. 1981)); accord Forsyth, 114 F.3d at 1474.

Based on the foregoing, it is HEREBY ORDERED that:

1. The Clerk's Office shall send to Plaintiff a civil rights complaint form;
2. Within **thirty (30) days** from the date of service of this order, Plaintiff must either:
   a. File an amended complaint curing the deficiencies identified by the Court in this order, or
   b. Notify the Court in writing that he does not wish to file an amended complaint and wishes to proceed only against Defendants Cantu, Oxborrow and Rodriguez for use of excessive physical force and against Defendant Cantu for failure to protect Plaintiff ; and
3. If Plaintiff fails to comply with this order, the Court will recommend that this action be dismissed for failure to obey a court order.

IT IS SO ORDERED.

   Dated:   **September 19, 2013**                **/s/ Gary S. Austin**
                                                     UNITED STATES MAGISTRATE JUDGE