UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRETT PASSINEAU,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>W. OXBORROW, et al.,<br><br>　　　　Defendants. | 1:12-cv-01894-LJO-GSA-PC<br><br>FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT FOR FAILURE TO EXHAUST REMEDIES BE GRANTED<br>(Doc. 39.)<br><br>OBJECTIONS, IF ANY, DUE WITHIN THIRTY DAYS |

## I.　BACKGROUND

Brett Passineau ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis with this civil rights action filed pursuant to 42 U.S.C. § 1983.  Plaintiff filed the Complaint commencing this action on November 19, 2012.  (Doc. 1.)  The case now proceeds with the original Complaint, against defendants Correctional Officer (C/O) E. Cantu, C/O R. Rodriguez, and Sergeant (Sgt.) W. Oxborrow for use of excessive force, and against defendant C/O E. Cantu for failure to protect, in violation of the Eighth Amendment.[1]

On May 12, 2014, defendants Cantu, Oxborrow, and Rodriguez ("Defendants") filed a motion for summary judgment under Rule 56 on the grounds that the undisputed facts establish

---

[1] On November 21, 2013, the court dismissed all other claims and defendants from this action, based on Plaintiff's failure to state a claim under § 1983.  (Doc. 15.)

that Plaintiff failed to exhaust his available administrative remedies with respect to the allegations against Defendants in this action. (Doc. 39.) On August 25, 2014, Plaintiff filed an opposition to the motion. (Doc. 45.) On September 10, 2014, Defendants filed a reply to the opposition. (Doc. 50.) On November 17, 2014, with leave of court, Plaintiff filed a surreply. (Doc. 57.) Defendants' motion for summary judgment is now before the Court.

## II.   PLAINTIFF'S ALLEGATIONS

Plaintiff is presently incarcerated at Pleasant Valley State Prison (PVSP) in Coalinga, California, where the events at issue in the Complaint allegedly occurred. Plaintiff's factual allegations follow.

Plaintiff, a convicted sex offender, arrived at PVSP on May 25, 2011, and was placed on a sensitive needs yard. Plaintiff requested protective custody because of his underlying offense. The Facility A sensitive needs yard where Plaintiff was housed is populated mostly by inmates convicted of sex crimes or crimes against children.

On June 14, 2011, Plaintiff was released from orientation status and ordered to move into Building 3, cell 129. The other inmate in cell 129 was inmate McCown. Upon Plaintiff's entrance into Building 3, defendant Cantu called Plaintiff over to the officer's podium. Plaintiff alleges, "Cantu then asked Plaintiff, 'what are you in prison for?' Plaintiff uncomfortably said, 'child abuse.' Cantu said, 'stop fucking lying. I know you're that Dateline rapist. Go to your cell.'" (Compl. at 5:7-10.)

When Plaintiff approached cell 129, Cantu called inmate McCown to the podium. Cantu spoke with McCown at the podium. Plaintiff alleges that the following occurred:

> When McCown entered the cell and closed the door, he began questioning Plaintiff about his commitment offense. Plaintiff told McCown that he would not answer personal questions. McCown then said, "I have it from a higher authority that you're that Dateline rapist. You have to move your shit out of here, we can't be cellies."
>
> Plaintiff went to the cell door and yelled to Cantu, saying, "please help me. My cellie doesn't want me in here." Cantu ignored him. Plaintiff yelled again, saying, "I have to get out of here. My cellie's gonna beat me up. Please help me." However, Cantu ignored Plaintiff once more.

> Cell 129 is situated behind the officer's podium, and in close proximity thereto. Given that Plaintiff was screaming at the top of his voice, it is nearly impossible for Cantu not to have heard Plaintiff's screams for help.
>
> McCown then approached the cell door and yelled, "Cantu, get this f***ing dude out of my cell, or I'm gonna beat his ass." At that point, an inmate porter came to the door, and said, "I just got at Cantu for you. He's not coming over here. You're gonna have to sock that dude up."
>
> McCown then approached Plaintiff and began punching him in the neck and face. Plaintiff lost his balance and fell, hitting his head on the cell table. Plaintiff curled up on the ground to help fend off McCown's blows. McCown then kneed Plaintiff in the side of his head and neck. Plaintiff started screaming for help and retreated under the cell table.
>
> While McCown continued punching Plaintiff, Cantu came to the cell door and yelled, "Get down. Get the f**k down." Plaintiff then heard the alarm sound.
>
> Responding staff arrived at the cell and McCown stopped punching Plaintiff. The cell door opened and Defendants Cantu and Oxborrow ordered Plaintiff to crawl out of the cell backwards. Plaintiff complied with this order.
>
> As Plaintiff started crawling as instructed, Cantu and Oxborrow violently grabbed Plaintiff's legs and snatched him out the cell, hitting Plaintiff's leg on the metal door jamb, which caused Plaintiff to scream in pain.
>
> After pulling Plaintiff out of the cell, and while Plaintiff's was behind his back [sic], Cantu dropped his knee with full force in the small of Plaintiff's back, causing pain. Plaintiff tried turning around to ask why force was being applied to his back, when Defendant Rodriguez violently stepped on Plaintiff's neck and yelled, "Turn around. Don't f**king look at me." Defendants Cantu, Oxborrow, and Rodriguez placed Plaintiff in handcuffs, lifted him to his feet and, without resistance from Plaintiff, slammed his face into the wall adjoining cells 128 and 129.

(Compl. at 5:14-7:7.)

Plaintiff alleges that after his face was slammed into the wall, Cantu and Rodriguez kicked his prescription eyeglasses away from him. Plaintiff asked for permission to retrieve his glasses. Both Cantu and Rodriguez then "violently jerked" on Plaintiff's arms and began escorting him to the Program Office. Plaintiff alleges that his glasses were destroyed, and he did not receive another pair for several months.

///

Plaintiff was taken to the Program Office, placed in a holding cell, and seen by a Licensed Vocational Nurse (LVN).  While Rodriguez was present, Plaintiff explained that he was experiencing head, neck and back pain from the attack by inmate McCown and the use of force by Cantu, Oxborrow and Rodriguez.  While the LVN was conducting the examination, Rodriguez "continually interrupted with expletives." (Compl. at 8 ¶35.)  Plaintiff asked Rodriguez "in a respectful manner" not to interfere with the medical evaluation because Plaintiff was injured and needed medical attention.  (Id.)  Rodriguez then directed the LVN to leave.  Plaintiff did not receive further medical treatment until two days later.  Plaintiff was seen by a physician, who diagnosed a subconjunctival hemorrhage in Plaintiff's left eye. Plaintiff was prescribed pain medication.

Plaintiff was subsequently released to Building 4, cell 139.  Plaintiff was denied a mattress and blanket for two days.  Plaintiff told C/O Gamboa [not a defendant] that he was in pain.  Plaintiff alleges that as a result of sleeping on the bare metal for two days, his head, neck and back pain worsened.

## III.   LEGAL STANDARDS

### A.   Statutory Exhaustion Requirement

Section 1997e(a) of the Prison Litigation Reform Act of 1995 (PLRA) provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  Prisoners are required to exhaust the available administrative remedies prior to filing suit.  Jones v. Bock, 549 U.S. 199, 211, 127 S.Ct. 910, 918-19 (2007); McKinney v. Carey, 311 F.3d 1198, 1199-1201 (9th Cir. 2002).  Exhaustion is required regardless of the relief sought by the prisoner and regardless of the relief offered by the process, Booth v. Churner, 532 U.S. 731, 741, 121 S.Ct. 1819 (2001), and the exhaustion requirement applies to all prisoner suits relating to prison life, Porter v. Nussle, 534 U.S. 516, 532, 122 S.Ct. 983, 993 (2002).

An untimely or otherwise procedurally defective appeal will not satisfy the exhaustion requirement. Woodford v. Ngo, 548 U.S. 81, 90, 126 S.Ct. 2378, 2386, 165 L.Ed.2d 368

(2006). When an inmate's administrative grievance is improperly rejected on procedural grounds, however, exhaustion may be excused as "effectively unavailable." Sapp v. Kimbrell, 623 F.3d 813, 823 (9th Cir. 2010); see also Nunez v. Duncan, 591 F.3d 1217, 1224–26 (9th Cir. 2010) (warden's mistake rendered prisoner's administrative remedies "effectively unavailable"); Ward v. Chavez, 678 F.3d 1042, 1044-45 (9th Cir. 2012) (exhaustion excused where futile); Brown v. Valoff, 422 F.3d 926, 940 (9th Cir. 2005) (plaintiff not required to proceed to third level where appeal granted at second level and no further relief was available).

**B.     California Department of Corrections and Rehabilitation (CDCR) Administrative Grievance System**

The Court takes judicial notice of the fact that the State of California provides its prisoners and parolees the right to appeal administratively "any policy, decision, action, condition, or omission by the department or its staff that the inmate or parolee can demonstrate as having a material adverse effect upon his or her health, safety, or welfare." Cal.Code Regs. tit. 15 § 3084.1(a). The process is initiated by submitting a CDCR Form 602. Id. at § 3084.2(a).

At the time of the events giving rise to the present action, California prisoners were required to submit appeals within thirty working days of the event being appealed, and the process is initiated by submission of the appeal at the first level. Id. at §§ 3084.7(a), 3084.8(c). Three levels of appeal were involved, including the first level, second level, and third level. Id. at § 3084.7. The third level of review exhausts administrative remedies. Id. at § 3084.7(d)(3).

In order to satisfy § 1997e(a), California state prisoners are required to use this process to exhaust their claims prior to filing suit. Woodford, 548 U.S. at 85 (2006); McKinney, 311 F.3d. at 1199-1201.

**C.     Motion for Summary Judgment for Failure to Exhaust**

The failure to exhaust in compliance with section 1997e(a) is an affirmative defense under which Defendants have the burden of raising and proving the absence of exhaustion. Jones, 549 U.S. at 216; Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003). On April 3, 2014, the United States Court of Appeals for the Ninth Circuit issued a decision overruling

Wyatt with respect to the proper procedural device for raising the affirmative defense of exhaustion under § 1997e(a). Albino v. Baca ("Albino II"), 747 F.3d 1162, 1168–69 (9th Cir. 2014) (en banc). Following the decision in Albino II, defendants may raise exhaustion deficiencies as an affirmative defense under § 1997e(a) in either (1) a motion to dismiss pursuant to Rule 12(b)(6)[2] or (2) a motion for summary judgment under Rule 56. Id. If the Court concludes that Plaintiff has failed to exhaust, the proper remedy is dismissal without prejudice of the portions of the complaint barred by § 1997e(e). Jones, 549 U.S. at 223–24; Lira v. Herrrera, 427 F.3d 1164, 1175–76 (9th Cir. 2005).

Summary judgment is appropriate when it is demonstrated that there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Albino II, 747 F.3d at 1169 ("If there is a genuine dispute about material facts, summary judgment will not be granted.") A party asserting that a fact cannot be disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials, or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The Court may consider other materials in the record not cited to by the parties, but is not required to do so. Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified School Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010). In judging the evidence at the summary judgment stage, the Court "must draw all reasonable inferences in the light most favorable to the nonmoving party." Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 942 (9th Cir. 2011). The Court must liberally construe Plaintiff's filings because he is a pro se prisoner. Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010) (quotation marks and citations omitted).

---

[2] Motions to dismiss under Rule 12(b)(6) are only appropriate "[i]n the rare event a failure to exhaust is clear on the face of the complaint." Albino II, 747 F.3d at 1162.

1   In a summary judgment motion for failure to exhaust administrative remedies, the
2  defendants have the initial burden to prove "that there was an available administrative remedy,
3  and that the prisoner did not exhaust that available remedy." Albino II, 747 F.3d at 1172. If
4  the defendants carry that burden, "the burden shifts to the prisoner to come forward with
5  evidence showing that there is something in his particular case that made the existing and
6  generally available administrative remedies effectively unavailable to him." Id. The ultimate
7  burden of proof remains with defendants, however. Id. "If material facts are disputed,
8  summary judgment should be denied, and the district judge rather than a jury should determine
9  the facts." Id. at 1166.

## IV. DEFENDANTS' STATEMENT OF UNDISPUTED FACTS (DUF)

1. California Department of Corrections and Rehabilitation (CDCR) has established a multilevel process that provides inmates the right to grieve administratively "any departmental decision, action, condition or policy perceived by those individuals as adversely affecting their welfare." Cal. Code Regs., tit. 15 § 3084.1(a).

2. Before January 28, 2011, the system included an initial "informal" staff review of the inmate grievance, but this step was eliminated under regulatory revisions. Decl. J. Morgan Supp. Defs.' Mot. Summ. J. (Morgan Decl.) ¶ 3.

3. The system currently consists of three formal levels of appeal: (1) a first level staff response; (2) second level appeal to the institution head or designee; and (3) third and final level appeal to the CDCR Office of Inmate Appeals' director. Cal. Code Regs., tit. 15, §§ 3084.7, 3084.8; Morgan Decl. ¶ 3.

4. Failure to pursue a grievance through the third and final level constitutes a failure to exhaust. Cal. Code Regs., tit. 15, § 3084.7(d)(3). Morgan Decl. ¶ 3.

5. Passineau has submitted a total of four inmate grievances to the appeals office at Pleasant Valley State Prison (PVSP), all in 2013, but none of these four grievances concerned the June 14, 2011, incident that forms the basis of his claims of excessive use-of-force or failure to protect. Morgan Decl. ¶ 9.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

6.  There is no record of an inmate-grievance submitted by Passineau regarding the incidents alleged in the complaint and that constitute the basis of his claims against Defendants.  Morgan Decl. ¶ 9.

7.  Passineau was informed of the grievance process upon arrival at PVSP. All inmates receive copies of the grievance rules upon arrival. Passineau received a copy of the rules.  Morgan Decl. ¶ 10.

**V.  DEFENDANTS' MOTION**

Defendants argue that Plaintiff failed to exhaust his administrative remedies for his claims against Defendants, because Plaintiff submitted a total of four inmate grievances to the appeals office at Pleasant Valley State Prison (PVSP), all in 2013, and none of the four grievances concerned the June 14, 2011 incident that forms the basis of his claims of excessive use-of-force or failure to protect in this action.  (Defendants' Statement of Undisputed Facts (DUF) 5; Morgan Decl., Doc. 39-2 ¶ 9.)  Defendants submit evidence that there is no record of an inmate grievance submitted by Plaintiff regarding the incidents alleged in his complaint.  (DUF 6; Morgan Decl. ¶ 10.)  Defendants argue that Plaintiff had knowledge of the grievance system and its rules, because Plaintiff, like all inmates, received a copy of the grievance process rules upon arrival at PVSP, informing him of the grievance process.  (DUF 7; Morgan Decl. ¶ 10.)  Based on these facts, Defendants request that their motion for summary judgment be granted.

Based on an examination of Defendants' Undisputed Facts and evidence, the court finds that Defendants have met their burden of showing evidence that there was an administrative remedy available to Plaintiff, but that Plaintiff did not exhaust the appeals process for his claims against defendants Cantu, Rodriguez, and Oxborrow in this action.  However, the mere absence of exhaustion does not entitle Defendants to dismissal of this action.  See Brown, 422 F.3d at 935-36 ("[A] prisoner need not press on to exhaust further levels of review once he has either received all 'available' remedies at an intermediate level or has been reliably informed by an administrator that no remedies are available").  As discussed above, § 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any

other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies *as are available* are exhausted." 42 U.S.C. § 1997e(a) (emphasis added).  Therefore, the burden shifts to Plaintiff to come forward with evidence showing that he did exhaust his available remedies, or that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him.

## VI. PLAINTIFF'S OPPOSITION

The Court looks to Plaintiff's Complaint and Opposition.[3]  (Docs. 1, 45.)   In the Complaint, Plaintiff asserts that "[p]ursuant to 42 U.S.C. § 1997e(a), [he] exhausted all administrative remedies that were made available to him."  (Compl. at 11 ¶56.)  In his Opposition, Plaintiff asserts that upon arrival at PVSP, "[he] did not receive any rules on how to file a grievance and that is what lead (*sic*) me to send my appeal to Sacramento." (Doc. 45 at 2:20-23.)  Plaintiff declares that because he was a "first termer," he thought that complaints should be sent to Sacramento. (Id. at 1:22-25.)  Plaintiff claims that PVSP does not give all inmates a copy of the rules, and he did not know how or where to file his grievance. (Id. at 1:25-26, 2:5.)  Plaintiff argues that this case should not be dismissed for failure to exhaust, and he requests PVSP to allow him to exhaust his remedies now.

## VII. DEFENDANTS' REPLY

Defendants argue that Plaintiff's unsupported allegations, that he failed to exhaust remedies because he erroneously attempted to file his grievance in Sacramento, is a self-serving statement which is not credible evidence and does not create a material dispute of fact. Defendants submit evidence that Plaintiff was informed of the inmate-grievance procedures upon his arrival at PVSP and at his previous institution, North Kern State Prison (NKSP). Plaintiff acknowledged receipt of Title 15, which discusses the procedures at length, at NKSP by signing a chrono dated February 17, 2010. (Cote Decl. ¶¶7-8, Doc. 53, Exh. A.)  Additional

---

[3] In deciding a motion for summary judgment, the Court may consider other materials in the record.  Fed. R. Civ. P. 56.  Plaintiff signed the Complaint under penalty of perjury.  (Doc. 1 at 13.)  Plaintiff also signed his Opposition and Surreply under penalty of perjury.  (Doc. 45 at 2; Doc., 57 at 9.)  Therefore, Plaintiff's opposition to the motion for summary judgment is based in part on the evidence in his verified Complaint, Opposition, and Surreply, including the Exhibits supporting these documents.

copies of Title 15 are available in NKSP's law library for inmate use.  (Id. ¶7.)  Upon arrival at PVSP, Plaintiff was given a copy of PVSP's Inmate Orientation Handbook discussing, among other things, the grievance procedures, and copies of Title 15 are available in PVSP's law library upon request, and with the Men's Advisory Counsel of each PVSP facility. (Morgan Decl., Doc. 39-2 ¶ 10; Herrera Decl., Doc. 51 ¶¶4-5, Exh. A.)  Following the June 14, 2011 incident at issue in the Complaint, Plaintiff was issued a Rules Violation Report, form CDC 155, for fighting, and when he was found guilty of fighting, Plaintiff "was advised of his appeal rights per CCR § 3084.1(a)."  (Cote Decl., Exh. B at p. 3.)  Defendants also submit evidence that since filing suit, Plaintiff has submitted four other grievances, one which received a final level of review, demonstrating a clear understanding of CDCR's inmate-appeals process.  (Morgan Decl., Doc. 39-2, Exh. A.)

Defendants also argue that Plaintiff's opposition was untimely under Rule 230(*l*), because it was not filed within twenty-one days of Defendants' motion for summary judgment. The motion for summary judgment was filed on May 12, 2014, (Doc. 39), and by June 10, 2014, Plaintiff had not filed an opposition, prompting the court to issue an order requiring Plaintiff to file a response to the motion within thirty days, (Doc. 42).  Plaintiff filed an untimely motion for extension of time on June 13, 2014, (Doc. 44), which was granted, extending Plaintiff's deadline to file his opposition to August 18, 2014, (Doc. 44).  Plaintiff did not serve his opposition on Defendants until August 20, 2014, (Defs.' Request for Judicial Notice (RJN), Doc. 54, Exh. A), and did not file the opposition until August 25, 2014, (Doc. 45).  Defendants argue that Plaintiff's opposition should be stricken from the record because it was untimely and Plaintiff failed to comply with the Court's order.

Defendants also argue that Plaintiff has not shown that he exhausted his remedies.  On or about February 9, 2012, Plaintiff submitted a "Staff Complaint" grievance (IAB No. 1110074) directly to the Office of Inmate Appeals in Sacramento, which conducts the third level review of inmate grievances. (Briggs Decl., Doc. 52 ¶¶ 1-7, Exh. A.)  The grievance was screened out and returned to Plaintiff as improper because he had bypassed the requisite first and second levels of review and was not authorized to do so.  (Id.)  Since the grievance was

screened out and returned to Plaintiff, Defendants did not retain a copy of it and are unable to discern whether this is the grievance he claims to have submitted before filing suit. (Id.) But assuming *arguendo* that this was the grievance in question, it did not receive the requisite third, and final, level of review because it was screened out and returned as improper. (Id.)

Defendants argue that Plaintiff confirms a failure to exhaust in his opposition, when he requests that "the court order Pleasant Valley State Prison to allow the Plaintiff to exhaust his administrative remedies now then bring the case back to court." (Pltf's Opp'n, Doc. 45 at 1.)

Defendants request that their motion for summary judgment be granted, or in the alternative, that the disputed questions be decided by the Court at a "preliminary proceeding" early in the litigation, pursuant to Albino II, 747 F.3d at 1168.

## VIII.   PLAINTIFF'S SURREPLY

Plaintiff concedes that he did not exhaust his administrative remedies through the prison's appeal process. However, he sets forth evidence to show that he exhausted the remedies made available to him.

Plaintiff asserts that he had never been to prison in his life, when he found himself in prison for sex crimes against children for which he is innocent. (Pltf's Decl., Doc. 57 at 1:24-25.) In December 2010, Plaintiff arrived at North Kern State Prison (NKSP). (Id. at 1:26.) While being processed, Plaintiff was told to sign many forms, but he was never given a copy of the CDCR's Rule Book. (Id. at 1-2.) The Correctional Officer informed the inmates that they would get the rule book at a later date, because there were none available. (Id. at 2:2-3.) Plaintiff was not allowed to attend the law library during orientation, and he was never given any rule book while housed at NKSP from February 7, 2010 to May 25, 2011. (Id. at 2:4-7.) Plaintiff argues that F. Cote's assertion in his declaration, (Doc. 53), that CDCR procedures require all inmates to be given a copy of the grievance procedures upon arrival at NKSP, does not prove that Receiving and Release officers never tell inmates to sign the 218-O form and they will get a copy of Title 15 at a later date, or that Plaintiff was never told he would receive a copy at a later date because they had run out of copies.

///

Plaintiff was transferred to PVSP on May 25, 2011, and again placed on orientation status. (Id. at 2:8-9.) Plaintiff was never given a PVSP Inmate Orientation Handbook. (Id. at 2:9-10.) Plaintiff asked many other inmates who arrived at PVSP in 2011 about the Orientation Handbook, and they told him that they also did not receive any. (Id. at 2:10-12.) Plaintiff argues that, contrary to the assertion in J. Herrera's declaration, (Doc 51), all inmates do not receive a copy of the handbook, and Plaintiff knew nothing about the handbook until he filed this case. (Id. at 2:13-17.) Plaintiff notes that J. Herrera's Exhibit A, (Doc. 51, Exh. A), is a copy of the 2013 Orientation Handbook, not the 2011 handbook.  Plaintiff asserts that he was never given any PVSP Orientation Handbook or a copy of Title 15. (Id. at 2:18-20.) Plaintiff argues that if J. Herrera wanted to prove that Plaintiff had received the handbook, he would have attached a copy of the 128-O Document Report signed by Plaintiff, acknowledging receipt of the handbook. (Id. at 5-6.) Plaintiff also argues that if the PVSP staff had been competent, they would not have placed him with cellmate McCown who assaulted him. (Id. at 3:19-26.)

Plaintiff does not dispute that he sent his appeal to Sacramento for review, in error, but he asserts that he had reasons to do so. (Id. at 4:10-13.) Plaintiff wrote out his appeal and tried to make a copy, but was unable to obtain copies because of staff shortages and lock downs. (Id. at 4:17-10.) Plaintiff sent the appeal to Sacramento because that was the only address on the appeal form, and because Plaintiff feared that if the correctional officers found out that he had filed an appeal, they would assault him again or even tell other inmates about his case. (Id. at 4:19-24.) At the time, the only thing Plaintiff could think was "just mail it to Sacramento and maybe get some help." (Id. at 4:24-25.) Due to the nature of Plaintiff's conviction [for sex crimes], he could not get help from other inmates, and he had just been assaulted by inmate McCown and staff, so there was no one to help him. (Id. at 4:26-28.) Now, Plaintiff has someone to assist him, and Plaintiff knows he has to exhaust remedies at all levels. (Id. at 51-2; see Decl. of Albert Long, Doc. 57 at 10-11.)    However, he was never told how to file an appeal until he found someone to assist him. (Id. at 5:3-5; see Decl. of Albert Long, Doc. 57 at 10-11.)

///

Plaintiff disagrees that his claim regarding his attempt to file an appeal in Sacramento is self-serving, and asserts that it was an honest mistake because he had not been provided with information about the appeals process. (Id. at 7:2-8.) Plaintiff asserts that he would have gladly submitted his appeal to all three levels of review if he had known about the process. (Id. at 7:5-8.) Plaintiff claims he had no reason not to trust the correctional officer who told him to sign the 128-O and assured him that he would be given a copy of the rule book. (Id. at 7:8-10.) Plaintiff requests that the motion for summary judgment be denied, or that an evidentiary hearing be held to determine the credibility of the witnesses.

## IX.   ANALYSIS

This case now proceeds on two claims: for excessive force, against defendants C/O E. Cantu, C/O R. Rodriguez, and Sgt. W. Oxborrow, and for failure to protect Plaintiff, against defendant C/O E. Cantu. (Docs. 1, 15.) Plaintiff's claims are based on an incident allegedly occurring at PVSP on June 14, 2011, during which Plaintiff was assaulted.

Plaintiff concedes that he did not exhaust his administrative remedies for these claims using the prison's appeals process. (Pltf's Surreply, Doc. 57 at 1:19-21.) At issue is whether the appeals process was made effectively unavailable to Plaintiff because NKSP and PVSP failed to provide him with sufficient information about using the appeals process. Plaintiff seeks to excuse his failure to exhaust by establishing that the facility's grievance process was unavailable to him because of (1) the failure of staff to inform him of the process, and (2) his fears of correctional officers and other inmates.

The test for deciding whether a grievance procedure was unavailable uses an objective standard. Albino v. Baca ("Albino I"), 697 F.3d at 1035. "[A]ffirmative actions by jail staff preventing proper exhaustion, even if done innocently, make administrative remedies effectively unavailable." Id. at 1034. An inmate may demonstrate the unavailability of remedies by showing "(1) that jail staff affirmatively interfered with his ability to exhaust administrative remedies or (2) that the remedies were unknowable." Id. at 1033. The inmate must make "a good-faith effort" to determine and comply with a prison's grievance procedures; "an inmate's subjective unawareness of an administrative remedy" is not "sufficient to excuse

exhaustion." Id. at 1035.  An inmate must "make reasonable, good-faith efforts to discover the appropriate procedure for complaining about prison conditions before unawareness may possibly make a procedure unavailable." Id.

Plaintiff asserts that he arrived at NKSP as a first-term prisoner and was later transferred to PVSP, but that he never received a copy of the prison's grievance procedures or any rule book or handbook at NKSP or PVSP.  Plaintiff asserts that he had no idea how to file a grievance after he was assaulted, and that he made an honest mistake in attempting to file an appeal in Sacramento instead of at the prison.  Plaintiff also asserts that he was too fearful of other inmates and correctional officers to ask for assistance in filing a grievance, because of his sex offender status and because he had just been assaulted by inmate McCown and correctional officers.  Plaintiff asserts that he later found another inmate to assist him, and he now knows how to use the appeals process, but at the time he attempted to file a grievance concerning the alleged assault, he was completely unaware of the process.

Thus, Plaintiff argues that the appeals process was unavailable to him because he was not informed about the process and was too fearful to ask for assistance.  This argument is unpersuasive, because Plaintiff has not shown (1) that prison staff *affirmatively interfered* with his ability to exhaust administrative remedies or (2) that the remedies were *unknowable* despite his good faith effort to become informed.  While Plaintiff provides evidence that prison staff failed to provide him with information, there is no evidence that prison staff affirmatively interfered with Plaintiff's attempt to exhaust his remedies.  There also is no evidence that the remedies were unknowable, and Plaintiff's subjective fears do not excuse his failure to make a good faith effort to become informed.[4]  Plaintiff's subjective unawareness is not enough to excuse exhaustion.  Albino I, 697 F.3d at 1035.  Therefore, Plaintiff has not met his burden of showing that the grievance procedure was "unavailable."   Id. at 1033; see also Ngo v. Woodford, 539 F.3d 1108, 1110 (9th Cir. 2008) ("Ngo hasn't shown that administrative procedures were unavailable, that prison officials obstructed his attempt to exhaust or that he

---

[4] Plaintiff asserts that he was too fearful of other inmates to ask them for assistance, but Plaintiff later found other inmates who are helping him with appeals and legal issues.  (Doc. 57 at 7:13-24.)

was prevented from exhausting because procedures for processing grievances weren't followed."). Because Plaintiff failed to exhaust available administrative remedies, his claims against defendants Cantu, Oxborrow, and Rodriguez must be dismissed, closing this case.

## X.     CONCLUSION AND RECOMMENDATIONS

Defendants have met their burden of demonstrating that under the undisputed facts, Plaintiff failed to exhaust his remedies prior to filing suit, in compliance with § 1997e(a). Defendants have shown an absence in the official records of any evidence that Plaintiff filed an inmate appeal pursuant to Title 15 of the California Code of Regulations § 3084.1, et seq., concerning Plaintiff's allegations in the complaint against the Defendants in this action. Plaintiff has not submitted evidence of disputed material facts calling into question whether he satisfied the exhaustion requirement for his claim against Defendants.

Therefore, **IT IS HEREBY RECOMMENDED that** Defendants' motion for summary judgment, filed on May 12, 2014, be GRANTED, and this action be dismissed in its entirety, without prejudice, based on Plaintiff's failure to exhaust.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  **Within thirty (30) days** after being served with these findings and recommendations, any party may file written objections with the court.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within ten days after service of the objections.  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, __ F.3d __, __, No. 11-17911, 2014 WL 6435497, at *3 (9th Cir. Nov. 18, 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

   Dated:   **December 30, 2014**                    **/s/ Gary S. Austin**
                                              UNITED STATES MAGISTRATE JUDGE